### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | CRIM NO. 22-CR-00230-RC |
| BRIAN JACKSON, | ) | Judge: Contreras |
| | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT BRIAN JACKSON'S MOTION TO REVOKE DETENTION ORDER

COMES NOW defendant Brian Jackson, through counsel, and pursuant to the Bail Reform Act of 1984, 18 U.S.C. 3141 et seq., respectfully moves this Court to review and revoke the current detention order issued on June 9, 2022, by the Magistrate Judge in the Houston Division of the U.S. District Court for the Southern District of Texas, and to release Mr. Jackson on personal recognizance with conditions the court deems appropriate. As reasons therefor, defendant states as follows:

### PROCEDURAL HISTORY

1.      Defendant Brian Jackson was originally charged by complaint on June 2, 2022, with five charges: 1) Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); 2) Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. §

1

111(a)(1); 3) Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); 4) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); and 5) Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(4).

2.     Mr. Brian Jackson was arrested on June 7, 2022, in Texas. He had his initial appearance on June 7, 2022, in the Houston Division of the U.S. District Court for the Southern District of Texas. At the first appearance in Texas, Magistrate Edison ordered Mr. Jackson held in confinement prior to a "Preliminary Examination & Detention Hearing" that he set for June 9, 2022, by minute order. On June 9, 2022, Magistrate Edison conducted a joint preliminary hearing for Adam and his brother Brian Jackson.

3.     Mr. Brian Jackson was indicted on June 29, 2022. In that indictment, Mr. Brian Jackson is charged with 5 counts: 1) Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); 2) Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1); 3) Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); 4) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); and 5) Engaging in Physical Violence in a Restricted Building or

Grounds, in violation of 18 U.S.C. § 1752(a)(4).

4.      On August 22, 2022, Mr. Brian Jackson appeared before the Honorable
Rudolph Contreras. At that time, based upon representations, this Honorable Court
gave Mr. Jackson until August 26, 2022, to file its Motion to Revoke the Detention
Order, which is the present motion.

**ARGUMENT**

Mr. Brian Jackson is a working man who works as a journeyman electrician
in his hometown of Katy, Texas. He has a fiancée with whom he resides, Tamara
Perryman. On January 6, 2021, Brian Jackson, along with his brother, Adam
Jackson, and another friend, traveled to the Washington D.C. to exercise his First
Amendment rights and attended the "Stop the Steal" protest occurring at Freedom
Plaza in Washington, DC. At approximately 5:00 p.m. on that day, several hours
after the first individuals arrived and crossed and presumedly removed barriers,
Mr. Jackson arrived at the U.S. Capitol to exercise their free speech rights and
continue exercising their First Amendment rights. At no time is it alleged by the
government that Brian Jackson entered, or even attempted to enter, the U.S.
Capitol. There was also no signage indicating that they could not be at that
location. According to the Statement of Facts, the only alleged violent conduct Mr.
Brian Jackson is alleged to have done is throwing an American flag on a light-tan

3

colored pole in the direction of fully geared police officers who were armed and were equipped with riot shields. There is not any indication that the pole made contact and/or injured any officer, or even any shields. There is no allegation that Mr. Jackson crossed any barriers or made any physical contact with any police officers during his time at the U.S. Capitol. The next day, Mr. Jackson returned to Texas, flying out of BWI airport on the afternoon of January 7th.

According to discovery provided by the government, Mr. Jackson became known to the FBI when a tip came over the FBI tip line identifying Mr. Brian Jackson by name back in March of 2021. However, Brian Jackson was not apprehended until June 7, 2022, approximately 17 months after January 6, 2021, when he was arrested without incident. During those 17 months, Brian Jackson continued with his daily life and employment with no law violations or incident. Brian Jackson did not evade law enforcement, nor did he have any reason to believe that his actions were criminal on January 6. Further, during this time, he did not commit any violent actions or ever return to Washington, DC.

If a federal defendant is ordered detained by a U.S. Magistrate Judge, the defendant may seek review of that release order by filing, with the Court having original jurisdiction over the offense, a motion to revoke the order or amend the conditions of release. See 18 U.S.C. § 3145(b). Our criminal justice system

4

embraces a strong presumption against detention. United States v. Ali Muhamed Ali, 793 F. Supp. 2d 386, 387 (D.D.C. 2011). "In our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Gloster, 969 F. Supp. 92, 96-97 (D.D.C. 1997) (quoting United States v. Salerno, 481 U.S. 739, 755 (1987)).

In cases where a detention hearing is authorized under 18 U.S.C. § 3142(f), the Court must then determine whether "any condition or combination of conditions…will reasonably assure the appearance of the person as required and the safety of any other person and the community." Id. As discussed above, the magistrate judge determined that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

The Bail Reform Act, 18 U.S.C. § 3141 et seq., provides that a defendant must be released pending trial unless it is determined that no condition or combination of conditions exist which will reasonably assure his appearance as required or the safety of the community. 18 U.S.C. § 3142(c). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" United States v. Munchel, 991 F.3d 1273, 1279 (D.C. Cir. 2021) (quoting United States v. Vasquez-Benitez, 919 F.3d 546, 550 (D.C. Cir. 2019)).

If the rebuttable presumption under 18 U.S.C. § 3142(e)(2) does not apply, as in the instant case, then with regard to the risk of flight analysis as a basis for detention, the Government must prove by a preponderance of the evidence that no combination of conditions will reasonably assure  the defendant's presence during future court proceedings.  When the basis for pretrial detention is the defendant's danger to the community, the Government is required to demonstrate the appropriateness of detention pursuant to subsection (e) by clear and convincing evidence. 18 U.S.C. § 3142(f). Short of that, a judicial officer is generally required to release the defendant "subject to the least restrictive condition or combination of conditions" to affect these goals. *Id.* "Under the Act, a decision to detain must be supported by written findings of fact and a statement of reasons and is immediately reviewable."  <u>Salerno</u>, 481 U.S. at 739.

The factors that must be considered in assessing the defendant's future dangerousness are  laid out in 18 U.S.C. § 3142(g) of the Bail Reform Act as: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.

## ANALYSIS OF THE 3142(g) FACTORS

### A. Nature and Circumstances of the Offense Charged

In specific regard to the January 6th related offenses, Chief Judge Howell has issued additional guidance specific to those defendants regarding pretrial release. As to the first factor, the nature and circumstances of the offense charged, In United States v. Chrestman, 525 F. Supp. 3d 14 (D.D.C. 2021), Chief Judge Howell outlined six factors the court should consider in assessing whether an individual should be preventively detained for offenses related to their actions on January 6, 2021. These six factors include whether the individual: (1) has been charged with misdemeanors or felonies; (2) engaged in prior planning before arriving at the Capitol, for example by obtaining weapons or tactical gear; (3) carried or used a dangerous weapon, be it a firearm, large pipe, wooden club, or other offensive use instrument; (4) coordinated with participants before, during, or after the riot; (5) assumed either a formal or *de facto* leadership role by encouraging other rioters misconduct; and (6) the defendant's words and movements during the riot—e.g., whether the defendant "remained only on the grounds surrounding the Capitol" or "stormed" into the Capitol interior, or whether the defendant injured, or attempted to injure, or threatened to injure others. When the court considers these factors, these factors weigh in favor of release.

Accordingly, the court should release Brian Jackson.

### 1.    Charged with a felony or misdemeanor

Mr. Brian Jackson is charged with 5 counts: 1) Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); 2) Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1); 3) Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); 4) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); and 5) Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(4). This is both a combination of both felonies and misdemeanors. However, as argued in part 3 *supra*, the evidence for the felonies is considerably weaker than for the misdemeanors. Accordingly, the defense would argue that this factor is in equipoise between the government and the defense.

### 2.    Prior planning

This factor is clearly in favor of the defense. There is no evidence that the government has provided that shows Mr. Brian Jackson with tactical gear or having brought weapons. In none of the photos or videos, Brian Jackson, or whom the government claims is him, is seen wearing anything other than a mask, a

hoodie, and a flag work as a cape; there is nothing to indicate any preplanned attire or gear other than one would wear to a political rally. The only "prior planning" appears to be some drinking and socializing prior to the event, which is hardly inconsistent with planning to attend a rally. Accordingly, this factor weighs in the defense's favor.

### 3.      Carried or used a dangerous weapon

This factor is one which the defense submits is in the defense's favor. However, this is the one in which, respectfully, the government tries to make its case without supporting evidence and asking the court to assume facts not in evidence. If the court sees the images in the statement of facts, it is difficult to tell what is happening through the images 4 through 7. While arguably that is a figure that matched Mr. Brian Jackson's appearance, it is impossible to tell what exactly is happening. From the images, regardless, it is clear that Mr. Jackson is several rows of people away from the police. It is unclear in those images what is happening, and there is no showing of any item being hurled. Instead, what you see is Mr. Jackson, if it is him, behind several members of the crowd, and then retreating from his closest position (a few rows behind other individuals) without any physical contact or reacting somehow to any action by the officers. Furthermore, there is no indication that the pole had some point or additional

feature that would caused the item to be a dangerous weapon, particularly since it is not alleged to have contacted any person, much less a police officer.

### 4.      Coordinated with participants

This factor weighs strongly in favor of Mr. Jackson. In the government's statement of facts, the following are essentially the coordination factors that are referenced as to Brian Jackson. Mr. Jackson does not dispute the fact that he was exercising his First Amendment rights of speech and assembly by attending the "Stop the Steal" rally on January 6, 2022. Nothing in the Statement of Facts asserted by the government indicate anything other than arranging a flight to attend the "Stop the Steal" rally which he attended with his brother and a friend. Any and all comments made by the defendants referred to the rally and not to any coordinated attacks on the Capitol, also within his First Amendment rights. As discussed above, it is far from clear that Mr. Brian Jackson made any assaultive actions towards any police officer. Comments afterward in addition in the Statement of Facts, do not provide any comments that would suggest coordination. Instead, all the comments suggest, at best, are reporting of events that allegedly happened and not suggesting in any way there was a coordinated plan. All comments that Mr. Jackson made were of a political nature. In fact, Mr. Brian Jackson indeed explains that he has no intention of being part of any future planned

action: "… I will never take my a** back to DC!!!" Statement of Facts at 12. This further supports, even prior to arrest, that he was not planning to be any future threat to any person in the Washington, DC area. Accordingly, this factor weighs to Brian Jackson's benefit.

### 5.   Leadership Role

At no time did Mr. Brian Jackson take a formal or even a *de facto* leadership role during the January 6th events. At no time does the evidence show Mr. Brian Jackson taking some sort of leadership role. To the contrary, as reported by the government, the videos obtained by the government indicate that Mr. Brian Jackson was creating Facebook with his camera of the events. In those videos, he is alleged to be recording the actions of others. Accordingly, as an observer, Mr. Brian Jackson is adhering to an observer role, and thus, a non-leadership role. In addition, the government makes references to various texts or messages that were forwarded. The only messages created from Mr. Jackson are ones in which he is either stating a political opinion, once again First Amendment speech, or editorializing on the actions of others. He is simply one of the many individuals who were in the crowd that day at the U.S. Capitol. None of these actions suggest a leadership role. Accordingly, this factor also weighs in Mr. Brian Jackson's favor.

### 6.     Defendant's words and movements

This factor should also be in the defendant's favor. There is no argument or charge that indicates that Mr. Brian Jackson entered the U.S. Capitol. Even based on the government's proffer, Mr. Jackson remained outside for the entire time and did not make any attempt to enter the U.S. Capitol. Indeed, as discussed above, the closest Mr. Jackson go to entry into the U.S. Capitol was when he was in front of the police officers with several individuals in front of him, not even within reach of the officers. At that time, Mr. Brian Jackson makes a voluntary exit away from the fray, and nowhere is it suggested that Mr. Jackson returned or tried to make his way into the U.S. Capitol from any other point of entry. Image 7, Statement of Facts at 6. He is also not heard or suggested to say he was trying to enter the U.S. Capitol building. Accordingly, this factor weighs in favor of Mr. Jackson.

### B. The weight of the evidence against the person

As indicated in section A.3 above, it is not clear in the statement of facts and the evidence presented that Mr. Brian Jackson assaulted a police officer. Further, at no point is there any indication of any reaction from a police officer to the behavior allegedly assessed to Brian Jackson. Indeed, the government does not mention in their indictment or statement the facts the identity of any police officer

who was injured by the item thrown.

Even assuming *arguendo* that Mr. Jackson did cause some assaultive action, the government does not suggest or have any evidence that there was any injury to any officer, nor do they even assert the name of an officer who was the victim of the alleged assault in the indictment. Even in the facts that are presented in the government's statement of facts, they indicate that "Brian Jackson hurling what appears to be an American flag on a light-tan colored pole at police officers." Statement of Facts at 5. There is no indication that the item made any contact with any police officer, that the item caused any injury, or that even any officer had any reaction or contact with the item that was thrown. In short, there was absolutely no effect upon the officers by the item being thrown. Given the evidence shown, without more information or proof, arguably the most dangerous of the charges, that involving assaultive behavior by Mr. Jackson, is in favor of the defense.

## C. The history and characteristics of the person

Prior to his arrest, Mr. Jackson was employed at Melton Electric & Structured Cabling as a journeyman electrician with his union. See Attachment A, Letter from John Lister. He lives with his fiancée, Tamara Perryman, whom he helps support financially, and Mr. Jackson's absence has caused considerable

13

financial strain. See Attachment B, Letter from Tamara Perryman. Furthermore, Mr. Jackson provides household and monetary support to Ms. Perryman's father, Jim Perryman. See Attachment C, Letter from Jim Perryman. Also, while he is preventively detained, he also is unable to provide court ordered child support, which Mr. Jackson had been paying prior to his arrest. In short, his absence from his home is provided unnecessary monetary challenges to many people who count on him.

Admittedly, Mr. Jackson has a criminal record. He spent an extended period of time due to a burglary charge in 2005. However, it is of note that Mr. Jackson has not engaged in any illegal behavior, or even been arrested, since January 6, 2021. This extended time shows that Mr. Jackson is a different person than his dated arrest record indicates. Accordingly, given his more recent lack of criminal record, this factor should weigh in favor of Mr. Jackson.

### D. The nature and seriousness of the danger posed by his release

The events of January 6th were very tumultuous and unprecedented. However, upon return to Texas, Brian Jackson returned to his life. He did not participate in any further events, rallies, or, more pointedly, any events of a tumultuous nature. To the contrary, Mr. Brian Jackson, made it clear that he had no

desire to return to Washington, DC. More importantly, Mr. Brian Jackson has undoubtedly shown his lack of danger to the community since January 6, 2021, despite there still being ongoing political discourse on the issues that were the subject of the rally itself. Further, given the fact that so much time passed between the anonymous tip from March 2021 and June 2022, when Mr. Jackson was arrested, and the government having knowledge of the accusations for all this time but not acting upon it, the government clearly did not believe Mr. Brian Jackson was a danger to the community for close to one-and-a-half years. Their change of opinion at this time claiming Mr. Jackson's danger is betrayed by the prolonged time that no action was taken. Accordingly, this factor also leans in Mr. Jackson's favor and supports Mr. Jackson's release.

WHEREFORE, for the reasons explained above, the defense respectfully requests that this court rescind the detention order issued by the Texas Magistrate of June 9, 2022, and that the court place Mr. Jackson on personal recognizance or, alternatively, with release conditions that will satisfy the court to assure the court with the safety of the community.

Respectfully submitted,

BRIAN JACKSON
By Counsel


 /s/ John L. Machado
John L. Machado, Esq.
Bar No. 449961
Counsel for Brian Jackson
503 D Street, N.W., Suite 310
Washington, DC 20001
Telephone: (703) 989-0840
E-mail: johnlmachado@gmail.com


## Certificate of Service

I hereby certify that a true copy of the foregoing was electronically filed with
the Clerk of the Court using the CM/ECF system this 26th day of August,
2022, which will send a notification of such filing (NEF) to the following to all
counsel of record.


   /s/John L. Machado
 John L. Machado, Esq.
 Bar Number 449961
 Attorney for Brian Jackson
 Law Office of John Machado
 503 D Street NW, Suite 310
 Washington, D.C. 20001
 Telephone (703)989-0840
 Email: johnlmachado@gmail.com

16