## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:22-CR-00230 (RC) |
| | ) | |
| BRIAN JACKSON, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S RESPONSE TO GOVERNMENT SENTENCING MEMORANDUM

Defendant, BRIAN JACKSON, by and through undersigned counsel, pursuant to the Court's Order at ECF No. 79, respectfully submits this Response to the government's Sentencing Memorandum (ECF No. 97; which was filed late without excuse on July 30, 2024), asks this Court to apply the recommendations in his Sentencing Memorandum at ECF No. 96; and states the following in support:

### The Government's Allegations Outside the Statement of Offense and Litigation are Embellished for Prejudicial Purposes

The government's Sentencing Memorandum ("Memorandum") is an ad hominem attack for prejudicial purposes that exceeds great poetic license in adding narrative not supported by facts or litigation; with allegations not contained in the Plea Agreement's Statement of the Offense (SOO). The government spent over 18 attack pages in its Memorandum before addressing the 18 U.S.C. § 3553(A) sentencing factors. The 18+ pages are meant to prejudice the Court with much embellished (often false) narrative that was uncalled for. The government should have professionally addressed relevant facts as contained in the Statement of the Offense, that could be supported by more than ad lib fiction, or that were cited as having been litigated on the record. The government appears upset because the Defense exercised its right to object to the PSR. The government's Memorandum with all its embellishments reads like a vicious attempt to extract

pounds of flesh from a man who expressed remorse, admitted that he was wrong, has had no income, and who has been incarcerated since June 7, 2022. It appears that the government is angered about this Court's sentencing of Brian's brother Adam, and now demands that this Court go beyond facts and severely punish Brian for an act that was less culpable than Adam's act.

1.   In the Memorandum at 2, the government wrote that Mr. Jackson "chose to go to the Capitol only knowing that a violent riot was in progress." This is false. The drunk group saw something on TV. When they decided to go see what was happening, there were no reports of a riot or violence. The afternoon TV broadcasts were showing people all around the Capitol grounds and on the terraces. The word "riot" was not used at that time. Nor were the videos of clashes shown until later that evening and the next day.

2.   In further creative narrative writing, the government wrote, "they waited and watched the violence, hoping that rioters clad in tactical gear would make entry into the Capitol building so they could follow." *Id*. The available video shows the group standing around drinking and joking. Further, in this misconstrued allegation, the government conflates Adam's joking words as if they were Brian Jackson's words. The small group had no interest in what the tactically clad men did after those men departed the group drinking party.

3.   In yet another instance of creative writing regarding the act by the tunnel, the government wrote, "Jackson angrily gestured and spewed vitriol toward the police because they refused to give way." *Id*. Brian Jackson was yelling for the police to give him his brother back because he believed the police had dragged Adam behind the line. Brian did not have an unobstructed view of his brother or his actions. The government just made this up out of whole cloth.

4.   In another false embellishment – nowhere insinuated in the Plea's SOO – the government fictionalized that, "As they approached the West Front of the Capitol building, they would have seen indications of the chaos that lay ahead, such as downed fencing, debris, police lines, and pepper spray." *Id*. at 3. Multiple trials before the Court have shown that the fencing was torn down shortly after 1:00 p.m. and with thousands of people on the west lawn, by 2:45 p.m. there were no police lines anywhere below the upper terraces. There was no visible evidence the area had ever been closed. People were freely entering and exiting the west grounds. Pepper spray was only being fired in the immediate area of the tunnel between 3:15 - 4:45 p.m. There was a break earlier (in police attacks against protestors without warning) because the police required resupply after expending their vast quantities of pepper spray. The police had stopped firing ammunition at protestors at ground level by the time Brian Jackson arrived on the grounds.

5.   The government falsely embellished that, "At approximately 4:15 p.m., amid a crowd of rioters densely assembled on the Lower West Terrace, as Jackson looked on, Adam and the friend climbed to the top of a ladder and took videos of the crowd."  *Id*. at 4. Brian Jackson walked around taking videos and was not engrossed in what his brother and friend were doing on the ladder. He was not involved in Adam's videos and words from the ladder.

6.   In yet another nonfactual embellishment created out of thin air, the government wrote, "The three men were eager to be part of what was going on there." *Id*. at 4-5. This is another creation out of whole cloth. The three men were drunk and Brian had no eagerness to do anything.

7.   The government falsely infers as related to image 3 that Brian, his brother, and friend were by the mouth of the tunnel when Adam was either handed or picked up an abandoned police riot shield. *Id*. at 6. That the government would present Brian's drunken words that Adam stole the shield from a police officer as something to be taken seriously defies logic. If Adam had assaulted

a police officer and taken the shield, he would have been charged with other crimes – and he was not.

8. Another government embellishment not supported by facts was the allegation that, "At about 4:57 p.m., Jackson watched his brother assault the police officers at the mouth of the Lower West Terrace tunnel . . . " *Id*. at 7. At that time, Brian was searching for his brother where others moving between him and Adam obstructed his view (as did his alcohol brain), even when he was close to Adam.

9. In yet another creative narrative, the government wrote, " Jackson and other rioters at the tunnel seemed to be instantly energized by Adam's audacious action, in as much as they commenced a reinvigorated assault." *Id*. at 8. This is patently false. CCTV showed that others (such as the convicted Josiah Kenyon and those around him) were constantly picking up large objects, such as speakers, and throwing those at police. One video even makes it appear that Adam was struck in the back of the head by an object thrown by those whose assaults were constant. There was no "reinvigorated assault." Adam retreated with an injured, bleeding head.

10. It is unclear why the government uses the prejudicial word "spear" when it wrote that Brian launched the "wooden flagpole like a spear at the police officers in the tunnel." *Id*. at 8. Even a drunken man will inherently recall the laws of physics and aerodynamics where throwing a flagpole over the officers' heads would not include tossing a non-inherently dangerous object from a horizontal position relative to the direction of aim. It was a light wooden flagpole with no sharp, pointed end, and not a spear.

11. In another fictional narrative, the government wrote, "After the assault, Jackson and his friend remained on the steps, angrily taunting the officers in the tunnel." *Id*. at 12. The

4

government used video without audio (CCTV) to create this story. Brian was yelling for his brother. He was not "taunting."

12.  Going beyond fiction, the government wrote, " Later, Jackson and company celebrated their attacks by making hand gestures and shouting. See Images 12, 13 below. The depicted hand gesture, which resembles the 'okay' sign, is known to be associated with white power." *Id*. at 13. The expressions of happiness in the pictures were because Adam had been located. The assertion that the "OK Sign" hand gesture had anything to do with white power is a despicable DOJ fiction always repeated in January 6th cases. The hand gesture meant nothing but "OK" because Adam was "OK." This prejudicial fabrication attempt is well below the Court's dignity.

13.  The government again took poetic license to assert, "Jackson felt no remorse for his participation in the violence that day. To the contrary, in the early evening of January 6th, Jackson sent text messages expressing intense pride about having 'fucked that capital [sic] up' and called the police who risked their lives that day 'traitors.'" *Id*. at 15. The government unjustly includes text messages allegedly sent by Brian that were not in and differ from what was contained in the SOO. However, by that night, the news was reporting violence and the shooting of Ashli Babbitt. Brian's drunken texts were hyperbole. He clearly did not do any damage to the Capitol as his text asserted. His opinion that police invalidly shot munitions at protestors, when to that point he saw police as valid authority figures, was an after the fact opinion. Regardless, the change from the SOO is unwarranted.

14. After sobering up, Brian Jackson was not proud of his action or his hyperbole. The SOO captures that he unsent his bragging messages and asked others to delete those. This was remorse. Yet, the government could not help itself from altering facts and creating fiction about evidence deletion when it wrote, "he deleted evidence that showed his participation in the riot. On

January 7, 2021, he admitted to his fiancé, 'I deleted everything.' He also asked others to delete incriminating videos and messages he had previously sent to them." *Id*. at 15. The government adds another text not in the SOO that, "I took my other fb page down because of my trip to Dec on 6th posted a bunch pics I shouldn't have." *Id*. at 16.  This is another example of the government inferring bad intent.

 First, nothing was "evidence" in a legal sense. A remorseful private citizen can delete their own pictures and texts because they are embarrassed by their actions. Brian knew he should not have bragged, whether drunk or not. Brian had no indication that he was under investigation in the days after January 6th, or that anything was "evidence." The government never attempted to insert the words "evidence" and "incriminating" in the SOO. It created this story just to prejudice the Court. If the government believed what was just written in the Memorandum, it would have charged him with 18 U.S.C. Section 1512(c). It did not.

 15.  In another unnecessary embellishment, the government wrote, "As shown in Section II(B) of this memorandum, Jackson's felonious conduct on January 6, 2021 was part of a massive riot that almost succeeded in preventing the certification vote from being carried out, thwarting the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis." *Id*. at 19.  Brian Jackson's act was an individual act in a panic to get his brother from police and part of nothing else. Congress had been evacuated and could have completed the vote count at Ft. McNair if the Vice President had left the concrete bunker and gone there. Nothing "nearly succeeded" - written as of there was a giant conspiracy - which there was not among protestors. We all know there is no transition of power on January 6th of any year. There is a count of certificates. The Defense is not saying that the events at the Capitol were in any way good - they were not. But to insinuate that Brian Jackson had any intent to stop anything at the Capitol is

untrue. The paragraph is an unnecessary and vicious over-embellishment of a drunken act by a man who admits that act was wrong.

### The Government's Mischaracterization of the Plea Negotiations and Agreement

16.  The government's description of the Defense's objections are a mischaracterization of what the AUSA said and asserted in negotiations.

A.  In February 2024 telephonic negotiations, the Defense objected to the government's estimated points and enhancements. Plea, ECF No. 76 at 3. The paragraph heading is "Estimated Offense Level Under the Guidelines." The Defense wanted the statement that it agreed the estimate would apply to be deleted.

B.  The AUSA said that his superiors would not allow him to change the estimate by a single word. He then went into great lengths discussing that it is a government estimate and the Defense could object to the PSR. He relayed that in his home district, the government does not even include an estimate paragraph. He indicated that the paragraph was not legally meaningful, and the PSR was what counted.

C.  The AUSA indicated that the language about "agreeing" only regarded agreeing that the paragraph in the plea agreement was a government estimate that could be applied - if the PSR investigation found the enhancements. He said the Defense argument could be with the PSR.

D.  If the PSR had not just used the government's estimate and had actually completed a neutral investigation as required by law (to include reviewing facts and any evidence in the record as is supposed to occur), the government should have not contradicted its prior words, and should have no argument as complained about in the Memorandum at 17-18.[1]

---

[1] This Defense team is not the first where an AUSA told the Defense that the paragraph is not binding.

E.  The government's current argument, combined with a PSR that by its words infers it only used what the government said, equates to an illegal waiver of a Presentencing Investigation. The federal rules do not allow a defendant to waive the investigation in this way.

F. At the Plea Hearing, the Defense counsel noted to the Court that it wished to argue the points - depending on the PSR. The government did not object.

G. It is true that despite its declaration that the Defense was only agreeing that the government was providing a non-binding estimate, that the government then threatened a breach of the plea agreement when, as indicated might happen prior to the PSR, the Defense objected to the enhancements.  The government has thus asserted that the Defense had no right to object to the PSR after misrepresenting the government estimate as non-binding in the Plea Agreement.

H.  The Defense's arguments are contained within its sentencing memorandum. There is nothing to indicate that Mr. Jackson has not accepted responsibility for his action on January 6, 2021. The government's arguments (*Id*. at 18) are more embellishment that overlooks that Mr. Jackson chose to accept responsibility by a guilty plea for his act. Short of his crawling over broken glass, it is unclear what else the government expects for remorse and acceptance by Mr. Jackson.

### The Government's Narrative is Unjust in the Sentencing Factors

17.  The government seeks a sentence without showing an unembellished justification under the sentencing factors. The language is neither objective nor fair. It is vicious.

A.  This part of the sentencing factors was addressed in Paragraph 15. Brian Jackson went to the Capitol out of curiosity about what he expected to be a peaceful protest event. He had no indication of a riot. The TV broadcasts were showing an unruly crowd, with stupid acts of wall climbing. His act of throwing the flagpole was a panicked, drunken act to get his brother, whom he thought had been taken by police. He admitted he was wrong. He knew nothing about anything

going on in the Capitol. His act was wrong but when compared to other violence, it was not a level of violence that involved others. He was not "vehemently challenging and antagonizing officers" as claimed. Memorandum at 19. It was stupid, bad judgment regardless of his intent to keep his brother safe. He admits the wrongfulness.

      B.   Referring to a 30-year past criminal history where points were not even assessed is unnecessary. *Id*. at 20. <u>There is no long history of violence</u>. *Id*. For the incidents where he was wrong, Brian Jackson admitted guilt and paid his dues, including incarceration and release conditions. The government rather viciously represents that, "Furthermore, in light of the nature of the instant offense, it is worth noting he also has at least two other arrests for Terroristic Threat and Assault that Causes Bodily Injury that did not result in convictions." First, in Texas, the "terrorist threat" crime refers to arguments, where a party made a claim against another for words used. His cases were dismissed because witnesses showed the claims against him to be false. Likewise, an acquittal or dismissal does not equal guilt. It was completely unfounded and unnecessary for the government to falsely allege that "Jackson chose a bad path and never veered off." *Id*. For his wrongdoings, he is the one who gets caught and admits guilt when it exists. His family and friends have confirmed that he is a threat to nobody, he learned from his mistakes, and he accepted responsibility.

Then the government falsely claimed that, "It should also be noted that, in contrast with Adam, the extraordinary impact of incarceration on family and family businesses is not a factor in the determination of an appropriate sentence in this case." *Id*. Mr. Jackson's video exhibit counters the false allegation. Both his parents and his fiancée's father are anxiously awaiting his release for both business and health reasons. Brian previously supported them; and it has been an exceptional hardship on them for him to be incarcerated.

C. In hyperbolic fashion, given a drunk man who tossed a flagpole over the heads of police, the government wrote, "Jackson's assaultive conduct on January 6 was the epitome of disrespect for the law." *Id*. "Epitome" is hardly appropriate. "Stupid," and devoid of good judgment" are more appropriate. Additionally, the government refused to let Mr. Jackson write his own SOO - it forced him to sign their word of throwing "at" rather than :toward" or "over." As discussed in Mr. Jackson's memorandum, because the word "at" includes "toward" and "over," he accepted the language the government refused to change. The government omits that the point was argued and it was vicious in refusal to adapt pure truth.

D. The government falsely wrote, "While Jackson has accepted responsibility by pleading guilty–albeit 20 months after indictment, unlike Adam, he has never expressed any remorse. *Id*. at 21. The government offered Adam a plea deal without the Section 111(b) charge many, many months before even considering offering that to Brian. That is not Brian's fault, especially since the government previously refused to eliminate the Section 111(b) charge. Brian expressed remorse, despite the government's misrepresentation of what it said about the plea agreement. That is not Brian's fault, when he was remorseful ever since January 6th for his poor behavior. As previously noted, was the government expectation that he should crawl over broken glass?

The government then alleges that Mr. Jackson has committed some wrong because his fiancée created a GiveSendGo account (*id*. at 22) where all donations were expended supporting his jail commissary, and tablet and phone bill, as well as her expenses for staying in the D.C. area to see him when allowed. Mr. Jackson has no internet access and cannot view this old account that seeks donations where he never had title to any funds. The government never indicated in the Plea

Agreement that it would seek a fine from non-existent funds, or that it would creatively use non-existent, expended donations that were titled to his fiancée to try to extract blood from a stone.

Mr. Jackson needs no further incarceration time to deter him from any future crime.

E. - F.  Mr. Jackson's sentencing memorandum addressed the salient points related to the guidelines and other cases.

## **FINE**

The government disingenuously claims that Mr. Jackson can afford a fine. The PSR made clear that he has no money and has debts. His vehicle was repossessed. He has no savings. The government's reference to a case where, "it makes good sense to burden a defendant who has apparently concealed assets" to prove that "he has no such assets and thus cannot pay the fine." *Id*. at 27. He signed the PSR releases for financial investigation and it was proven he has no assets - with no concealed assets. Such a slur by the government was uncalled for. It is false that he profited from his crime. *Id*. at 27. It is also false that Mr. Jackson used "his own notoriety gained in the commission of his crimes to 'capitalize' on his participation in the Capitol breach in this way." *Id*. The government argued for and convinced this Court to incarcerate Mr. Jackson. He has no income. The jail serves what may be called a level above garbage for food; and he requires commissary money to maintain any semblance of health. His only contact with the world requires money deposited for his tablet and phone. The rates are high. Any funds collected by the GiveSendGo are long gone - and were never collected by or titled to Mr. Jackson. There are no funds!  He made no profit. He was incarcerated since his arrest on June 7, 2022. He has no money to pay a fine and the Court should believe the PSR versus the vicious argument the government makes to punish Mr. Jackson before he ever gets back to helping his parents and being employed.

**CONCLUSION**

Mr. Jackson provided this Court with a reasonable, objective, unembellished sentencing Memorandum. He expressed his remorse and has been remorseful since January 2021. He admitted guilt and accepted responsibility for his act that violated the law. He paid his dues in the past and now has constructively served 33 months of incarceration when considering the First Step Act.

WHEREFORE, for the reasons argued, the Court should accept Mr. Jackson's sentencing Memorandum and release him for time served on August 6, 2024, with other conditions (excepting a fine) as the Court sees fit.

Dated August 1, 2024                     Respectfully submitted,

                                          /s/ Carolyn Stewart
                                          Carolyn Stewart, Esq.
                                          D.D.C. Bar No. FL0098
                                          Defense Attorney
                                          Stewart Country Law PA
                                          1204 Swilley Rd.
                                          Plant City, FL 33567
                                          Telephone: (813) 659-5178
                                          Email: Carolstewart_esq@protonmail.com

**CERTIFICATE OF SERVICE**

I hereby certify on the 1st day of August, 2024, a copy of the foregoing was served upon all parties as forwarded through the Electronic Case Filing (ECF) System.

                                          /s/ Carolyn Stewart, Esq.
                                          Defense Attorney